IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero

| | |
|---|---|
| In re: | Case No. 23-14859 MER |
| Shilo Dion Sanders, | Chapter 7 |
| Debtors. | |
| David Wadsworth, Chapter 7 Trustee, | Adversary Pr. No. 25-1304 MER |
| Plaintiff, | |
| v. | |
| Shilo Dion Sanders, Big 21, LLC, and Headache Gang, LLC | |
| Defendants. | |

## ORDER DENYING MOTION TO DISMISS

THIS MATTER comes before the Court on the Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Bankr. P. 7012(b)(6) ("**Motion to Dismiss**") filed by Shilo Dion Sanders, Debtor/Defendant ("**Sanders**"), Big 21, LLC, and Headache Gang, LLC (collectively "**Defendants**") and the response filed by the Plaintiff, the Chapter 7 Trustee ("**Trustee**").[1]  The Motion seeks dismissal of seven of the eight claims alleged against the Defendants in the Trustee's Complaint.

## APPLICABLE STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pled factual allegations in the complaint as true and construe the complaint in favor of the plaintiff.[2]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[3]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[1] ECF Nos. 12, 19.

[2] *Ash Creek Mining v. Lujan*, 969 F.2d 868, 870 (10th Cir. 1992).

[3] *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001) (quotation omitted).

accepted as true, to 'state a claim to relief that is plausible on its face.'"[4] The critical question is, "assum[ing] the truth of all well-pleaded facts . . . and draw[ing] all reasonable inferences therefrom in the light most favorable to the plaintiffs," whether the complaint "'raise[s] a right to relief above the speculative level.'"[5]

## BACKGROUND

According to the well-pled facts in the Complaint, Sanders is a former college athlete who played football at the University of South Carolina, Jackson State University, and the University of Colorado. He filed the underlying Chapter 7 bankruptcy case on October 23, 2023. Both before and after the petition date, Sanders earned revenue as a social media influencer and by marketing his name, image, and likeness ("**NIL**") rights. Sanders formed and is the sole member of Defendants Big 21, LLC ("**Big 21**") and Headache Gang LLC ("**Headache Gang**"). Sanders entered into pre-petition NIL contracts primarily through Big 21 and post-petition NIL contracts primarily through Headache Gang.

Sanders has his own personal savings and checking accounts at Wells Fargo Bank. Big 21 has a business checking account in its name at Wells Fargo Bank ("**Big 21 Account**"). Sanders often transferred money between his personal accounts and the Big 21 Account. The revenue generated from Sanders' pre-petition NIL contracts was deposited into the Big 21 Account. On the petition date, the balance of the Big 21 Account was $20,292. From the petition date through the end of 2024, a total of $535,552.92 was deposited into Big 21's account, and $527,545.32 was transferred out.

The claims in the Trustee's Complaint focus on funds deposited in and transferred out of the Big 21 Account.[6] Trustee argues that some portion of these funds is property of the bankruptcy estate because they are either Sanders' pre-petition earnings, proceeds from pre-petition NIL contracts, and/or distributions from Big 21 to its sole member (i.e., Sanders). The Trustee contends Sanders must account for and turn over these estate funds under 11 U.S.C. § 542, that the funds must be returned to the estate as unauthorized post-petition transfers under § 549, or under theories of unjust enrichment, conversion, civil theft, or money had and received.[7] The Trustee further contends that Sanders' exercise of control over the funds violates the automatic stay.

---

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5] *Dias v. City & County of Denver,* 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

[6] The Complaint also has a claim for Fraudulent Transfer (Claim 8) involving monies transferred out of Sanders' personal bank accounts. The Defendants' Motion to Dismiss does not seek dismissal of Claim 8 and so the Court does not address it.

[7] All references to "section" or "§" shall refer to Title 11, United States Code, unless expressly stated otherwise.

Defendants contend these claims are deficient because they are based on the false premise that Big 21's assets are assets of Sander's bankruptcy estate. Because they are not estate property, Defendants argue the Trustee has no rights to the funds under any claim. Defendants also argue the monies deposited in the Big 21 Account after the petition date are Sanders' post-petition earnings and are thus excluded from the estate under § 541(a)(6). The Defendants further contend the Complaint contains insufficient factual allegations to support a claim for turnover.

## ANALYSIS

### A. Property of the Estate

Property of Sanders' bankruptcy estate is determined by § 541. That section's description of estate property is deliberately broad to include "all legal or equitable interests of the debtor in property as of the commencement of the case."[8] Determining the property of the estate can be somewhat complicated when an individual debtor owns and operates a business through a single member limited liability company ("LLC") or another similar closely held business entity. A debtor's membership interest in an LLC becomes property of his estate.[9] The assets owned by the LLC, however, do not.[10] Instead, the debtor's right to control management of the LLC and receive distributions from the LLC does.[11] While this distinction is easy to describe, in practice, the division between the LLC's profits and the individual owner's distribution rights is not always clear.

Property of the estate, as defined by § 541(a), also has a temporal limitation that can prove tricky. According to § 541(a)(1)'s plain terms, the determination of estate property is made as of the petition date. This definition, however, does not mean all property a debtor receives after the petition date is necessarily excluded from the estate. For example, § 541(a)(7) includes any interest in property the estate acquires *after* the petition date. This section is meant to capture "after-acquired" property interests that are created with or by property already in the estate.[12] The estate also includes contingent property interests that existed on the petition date or are otherwise

---

[8] 11 U.S.C. § 541(a)(1); *Woods Construction, LLC v. Graves (In re Graves)*, 609 F.3d 1153, 1156 (10th Cir. 2010).

[9] *In re Albright*, 291 B.R. 538, 540 (Bankr. D. Colo. 2003).

[10] *Gallan v. Bloom Business Jets, LLC*, 480 F.Supp.3d 1173 (D. Colo. 2020).

[11] *In re Albright*, 291 B.R. at 541; *Gallan*, 480 F.Supp.3d at 1182-83 (concluding that assets of individual debtor's single-member LLC did not constitute property of the debtor's bankruptcy estate); *Sheehan v. Warner (In re Warner)*, 480 B.R. 641, 653 (Bankr. N.D.W.V. 2012) ("[M]embers of a LLC do not have an ownership interest in the specific property of the company. But members do have a personal property interest in the distributions of a LLC."); *Meyer v. Haskett*, 251 P.3d 1287, 1292 (Colo. App. 2010) ("[A] member [of an LLC] has no interest in the property owned by the LLC.").

[12] *Porrett v. Hillen (In re Porrett)*, 564 B.R. 57, 68-69 (D. Idaho 2016) ("[S]ome 'property' of the bankruptcy estate within the meaning of § 541(a)(1) must be used to acquire the 'interest in property' post-petition for § 541(a)(7) to bring that after-acquired 'interest' into the bankruptcy estate.").

3

sufficiently "rooted in [the debtor's] pre-bankruptcy past."[13]  In that situation, post-petition payments resulting from pre-petition contingent interests become property of the estate.[14]  This is reinforced by § 541(a)(6), which specifically includes in the bankruptcy estate all "proceeds, product, offspring, rents or profits of or from property of the estate. . . ."  The term "proceeds" is not defined by it is broadly construed to include "all funds 'traceable to' or 'substituted for' the original property."[15]  For example, where a debtor musician composes a song pre-petition and earns royalties on that song post-petition, the post-petition royalties from that song belong to the bankruptcy estate.[16]  Similarly, if a debtor's litigation claim against a third party arises pre-petition, proceeds from that claim received in post-petition litigation belong to the estate.[17]

To further complicate matters, § 541(a)(6) excludes from the estate "earnings from services performed by an individual debtor after the commencement of the case." In other words, an individual debtor's post-petition earnings are not property of the estate.  What constitutes a debtor's "earnings" is not specifically defined by the Bankruptcy Code, but courts have recognized that it is not limited to only wages and salary.[18]  Earnings could include, for example, post-petition stock distributions made to the debtor by the debtor's closely-held businesses as part of a compensation package.[19]  The earnings exception has an explicit temporal limitation.  Only those earnings a debtor earns from service performed *after* the petition date are excluded from the estate.  If all or some portion of the services were performed by the debtor pre-petition, then those earnings become property of the estate.  For example, a commission a debtor-realtor earns on a sale procured pre-petition can be considered property of the estate even though the debtor's right to the commission vests post-petition at closing because the payment is for the debtor's pre-petition services.[20]

All of these concepts will be implicated in determining whether the post-petition funds in the Big 21 Account are property of the estate.  As discussed above, Big 21's assets did not become property of Sanders' bankruptcy estate, but the right to distributions did.  Monies deposited in the Big 21 Account are presumed to be assets of

---

[13] *Parks v. Dittmar (In re Dittmar)*, 618 F.3d 1199, 1208-10 (10th Cir. 2010); *see also Segal v. Rochelle*, 382 U.S. 375, 380 (1966) (holding that the bankruptcy estate included the debtor's loss-carryback tax refund claim because it was "sufficiently rooted in the pre-bankruptcy past.").

[14] *In re Dittmar*, 618 F.3d at 1208-10 (concluding employee stock appreciation rights, although contingent, were sufficiently rooted in debtor's pre-bankruptcy past to be considered property of the estate).

[15] *In re Porrett*, 564 B.R. at 68 (citing *In re Magnacom Wireless, LLC*, 503 F.3d 984, 992 (9th Cir.2007)).

[16] *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001).

[17] *In re Villescas*, 632 B.R. 223, 231-32 (Bankr. D. Utah 2021).

[18] *In re Evans*, 464 B.R. 429, 435 (Bankr. Colo. 2011).

[19] *Id*. at 438.

[20] *Prochnow v. Apex Properties, Inc. (In re Prochnow)*, 467 B.R. 656, 664 (C.D. Ill. 2012).

Big 21 because Big 21 is the account holder.[21] However, this presumption can be rebutted.[22] The Trustee's Complaint attempts to do this by arguing the funds were either Sanders' pre-petition earnings, "proceeds" from his pre-petition NIL contracts, or member distributions from Big 21 to Sanders. The Defendants dispute these contentions, instead arguing that monies in the Big 21 Account are Sanders' post-petition earnings.

Identifying the true nature of the funds will require presenting evidence and resolving numerous factual issues. For example, whether the funds are Sanders' pre- or post-petition earnings will depend on the type of services Sanders performed, when he performed them, and the terms of the contract(s) (if any) requiring those services. Whether the funds are instead contract proceeds or LLC distributions will depend on the same evidence as well as other issues like the terms of Big 21's and Headache Gang's operating agreements, the terms of any license of Sanders' NIL rights, how the payments were designated by the Sanders/Big 21 and whether the payments were tied to the "enterprise value" of Big 21 or Headache Gang.[23] The decision will also have to consider the unique nature of NIL interests, a relatively new property interest, the parameters of which have not been considered by many courts, let alone bankruptcy courts.

The Court cannot make these determinations in the context of deciding the Motion to Dismiss. The Court's role in deciding the Motion to Dismiss is not to resolve factual disputes or weigh potential evidence outside the four corners of the Complaint.[24] The Trustee has otherwise sufficiently pled the necessary elements of his claims. He has also supported his claims with sufficient factual allegations regarding Sanders' bank accounts, his NIL proceeds deposits into the Big 21 Account, and Sanders' control over

---

[21] *Amdura Nat'l Distribution Co. v. Amdura Corp., Inc. (In re Amdura Corp., Inc.)*, 75 F.3d 1447, 1451 (10th Cir. 1996).

[22] *Id*.

[23] *See In re Evans*, 464 B.R. at 438 (holding trustee failed to meet burden to show any portion of stock distributions were something other than earnings); *Hopkings v. Quilling (In re Quilling)*, 2014 WL 6863112, at *4-5 (Bankr. D. Idaho Dec. 3, 2014) (concluding shareholder distributions to debtors were proceeds included in the estate and not earning for personal services); *Litzler v. Sholdra (In re Sholdra)*, 270 B.R. 64, 71-72 (Bankr. N.D. Tex. 2001) (concluding payments debtor received from professional corporation medical practice were earnings); *Scott v. Decker (In re Decker)*, 623 B.R. 417, 429-30 (Bankr. W.D. Va. 2020) ("Either the earnings were from services performed after the commencement of the case or they were not. Merely because the debtor is a shareholder of an S Corporation does not change the timing of services rendered."); *Holber v. Segal (In re Segal)*, 579 B.R. 734, 743-45 (E.D. Pa. 2016) (payments debtor received on pre-petition consulting agreement were not earnings); *In re Ruetz*, 317 B.R. 549, 553 (Bankr. Colo. 2004) (determining debtor's right to real estate commission arose pre-petition despite being subject to various contingencies).

[24] *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted.").

Big 21 and Headache Gang. Whether the evidence will ultimately substantiate the Trustee's claims is a matter to be decided at trial.

## CONCLUSION

For the reasons stated above, the Court hereby ORDERS the Motion to Dismiss is DENIED.

Dated: March 4, 2026.

BY THE COURT:

Michael E. Romero, Judge
United States Bankruptcy Court